**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-11352

DEBORAH A. BRANTON,

                                                            Plaintiff-Appellant,

versus

CITY OF DALLAS, TEXAS; BENNIE R. CLICK,
Chief of Police, Individually and in his Official Capacity,

                                                            Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Texas
( 3:97-CV-245-P)

December 10, 1998

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

PER CURIAM:[*]

Deborah A. Branton appeals a Fed.R.Civ.P. 12(b)(6) dismissal of her 42 U.S.C. § 1983 complaint against her superior, Bennie R. Click, chief of police of Dallas, Texas, in his official and individual capacity. She alleges violation of her first amendment rights as a consequence of subjecting her to adverse employment actions because she reported the false testimony of a fellow officer in an internal

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

department proceeding against another officer. The district court dismissed the complaint, holding that Chief Click is entitled to qualified immunity.[1]

## BACKGROUND

For purposes of a Rule 12(b)(6) review, the well pled allegations of the complaint are accepted as true. The pertinent facts for present purposes are these. Branton has been employed by the Dallas Police Department since 1977. She has been a sergeant in the Office of Professional Standards, Internal Affairs Division since 1989. After nearly two decades, her departmental resume contained twenty-one commendations and no indication of any reprimands for misconduct. Prior to the events leading up this action, her duties included investigating internal departmental complaints and appearing at resulting administrative appeal hearings, in part to ensure that no false or inaccurate information was offered.

In July 1995, Branton was assigned to investigate a complaint filed by Officer DeLois Thomas against Officers Thomas Popken and Billy Hattaway. The investigation culminated in disciplinary action against Officer Popken. He appealed. On November 26, 1996, a hearing on the appeal was held before the Assistant City Manager, Levi Davis, the ultimate decision-maker in the matter; his decision was final and unappealable. During the hearing, Officer Thomas provided testimony that Branton believed to be false, and, after the hearing, she informed Davis of her belief. This conduct violated no departmental rules, regulations, or

---

[1]Branton also filed a § 1983 claim against the City of Dallas and a pendent state law claim against both defendants under the Texas Whistleblower Act, Tex. Gov. Code § 554.001 *et seq.* These also were dismissed but these dismissals are not at issue in this appeal.

policies, and Branton did not disobey any pertinent orders or instructions. To the contrary, she had been trained and urged to report dishonesty whenever it was encountered.

Shortly thereafter Branton's supervisors informed her that as a result of her conversation with Davis -- which they believed was improper -- she would be transferred; subsequently, her job performance was downgraded. Although her transfer was postponed and, as of the filing of her complaint, was still under review, she suffered other detrimental job consequences: for instance, she ceased receiving new case assignments; she was deprived of direct supervisory authority over the officers she previously commanded; and she was relegated exclusively to taking "walk-in" complaints, a task generally regarded as undesirable and one that previously had been rotated among officers. A formal disciplinary complaint was lodged against her based on her conversation with Davis.

Branton's complaint alleges that the adverse job consequences constitute unlawful retaliatory action in violation of the first amendment.

## ANALYSIS

We review *de novo* a district court's dismissal under Rule 12(b)(6). Dismissal is appropriate when, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."[2]

---

[2]**Conley v. Gibson**, 355 U.S. 41, 45-46 (1957); **Scheuer v. Rhodes**, 416 U.S. 232, 236 (1974); **Baker v. Putnal**, 75 F.3d 190, 196-97 (5th Cir. 1996).

Qualified immunity provides government officials with a limited affirmative defense against claims based on their performance of public duties. A government official is entitled to qualified immunity unless his "conduct . . . violate[s] [a] clearly established statutory or constitutional right[] of which a reasonable person would have known."[3] To overcome the defense of qualified immunity, the plaintiff must plead (1) transgression of a right that was clearly established at the time the defendant acted,[4] and (2) conduct that was objectively unreasonable in light of the specific facts at issue.[5]

Branton contends that the trial court erred in concluding that no constitutional violation had occurred because her speech did not warrant first amendment protection. At the very least, viewing the facts as set forth in the complaint, which is <u>all</u> we may consider under Rule 12(b)(6), the decision was prevenient.

It cannot be gainsaid that government employees have no unfettered right to disrupt the workplace at whim simply because of the fact that they are employed

---

Defendant circuitously suggests that plaintiff's pleading falls short of the standard articulated in **Schultea v. Wood**, 47 F.3d 1427 (5th Cir. 1995) (en banc). But Click did not request the district court to order Branton to submit a particularized reply to his defense of qualified immunity, and the district court did not do so on its own. On remand that decision perhaps ought to be revisited.

[3]**Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982).

[4]**Siegert v. Gilley**, 500 U.S. 226, 231 (1992).

[5]**Anderson v. Creighton**, 483 U.S. 635, 638 (1987); **see Hopkins v. Stice**, 916 F.2d 1029, 1030-31 (5th Cir. 1990) (a government official "enjoys qualified immunity if a reasonable official would be left uncertain of the application of the standard to the facts confronting him").

4

by the government.[6]  Nevertheless, it is beyond debate that public employees "may [not] be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the [government entity] in which they work."[7]  The competing interests of the government as employer and the employee as citizen are reconciled through a two-part test.  Initially, it must be determined whether the employee's speech addresses a "matter of political, social, or other concern to the community."[8]  If not, any further inquiry must be curtailed, because no first amendment violation has occurred.  If so, it must be determined whether the employee's interest in expression outweighs the government's interest in "promoting the efficiency of the public services it performs."[9]  Where an employee's interest in speaking out on a matter of public concern outweighs the government's countervailing interest, the employee is entitled to first amendment protection.[10]

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed

---

[6]**See Connick v. Myers**, 461 U.S. 138, 146-47 (1983); **Pickering v. Board of Educ.**, 391 U.S. 563, 568 (1968).

[7]**Pickering**, 391 U.S. at 568.

[8]**Connick**, 461 U.S. at 146.  The question is one that must be resolved as a matter of law by the court.  **Click v. Copeland**, 970 F.2d 106, 112 (5th Cir. 1992).

[9]**Pickering**, 391 U.S. at 568; **McBee v. Jim Hogg County**, 730 F.2d 1009 (5th Cir. 1992) (en banc).

[10]If the protected speech does not provoke the retaliatory act, the plaintiff has no cause of action.  **See Jones v. Collins**, 132 F.3d 1048 (5th Cir. 1998).  Click does not dispute that Branton was disciplined because of her communication with Davis.

by the record as a whole."[11]  It is undisputed that, at the time Click acted, speech relating to improper acts by public officials qualified as a matter of public concern.[12]  Our cases have long made clear that speech exposing official misconduct, particularly within the police department, is generally of great consequence to the public.[13]  As we have emphasized, "[t]here is perhaps no subset of matters of public concern more important, for purposes of First Amendment protection of speech of public employees, than bringing official misconduct to light."[14]  This includes "'[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials.'"[15]

We cannot accept the conclusion that the complaint alleges only a purely

---

[11]**Connick**, 461 U.S. at 147-48.

[12]**Schultea v. Wood**, 27 F.3d 1112, 1120 (5th Cir. 1994) ("No reasonable public official in 1992 could have assumed that he could retaliate against an employee because that employee disclosed instances of misconduct by a public official."), **superseded on other grounds**, 47 F.3d 1427 (1995) (en banc).

[13]**Brawner v. City of Richardson**, 855 F.2d 187, 191-92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest . . ., especially when it concerns the operation of a police department.").

[14]**Davis v. Ector County**, 40 F.3d 777, 782 (5th Cir. 1995); **Denton v. Morgan**, 136 F.3d 1038, 1043 (5th Cir. 1998) (same); **see Thompson v. City of Starkville**, 901 F.2d 456, 457 (5th Cir. 1990) (finding public interest implicated where employee alleged "'acts of dishonesty and misconduct includ[ing] such matters as [police officers] having extra-marital affairs while on duty, mistreatment of black persons, and theft of confiscated property.'") (first alteration in original).

[15]**Thompson**, 901 F.2d at 463 (quoting **Conaway v. Smith**, 853 F.2d 789, 796 (10th Cir. 1988) (per curiam)); **see Brockell v. Norton**, 688 F.2d 588 (8th Cir. 1982) (balancing test applies to determine whether first amendment protects officer who broke chain-of-command to report misconduct in police certification procedures).
Both parties agree that the suspension of Officer Popken relates to an alleged certification irregularity.

private affair involving an internal police policy. Viewing the allegations most favorably to Branton, as we must in a Rule 12(b)(6) assessment, we have a police officer being purposely untruthful in a proceeding involving the validity of disciplinary action against another officer. Providing false testimony during a quasi-judicial proceeding where punitive action is taken against another officer qualifies as official misconduct in which the public has a serious interest. The public interest demands that administrative hearings, which may serve as the exclusive grievance mechanism for law enforcement personnel, be free from the taint of false testimony. Denying employees first amendment protection in revealing improprieties as grave as false testimony raises the spectre of chilling their incentive to advance the truth. Silencing such employees is manifestly contrary to the public interest.

It is suggested that the speech at issue was not a matter of public interest but was, rather, a matter of merely personal interest. We are not persuaded. Based on the complaint, it is nigh impossible to fathom the personal gain Branton could have hoped to achieve by speaking out.[16]

Having determined that Branton's speech touched upon matters of public concern, we must then inquire whether the balance of interests tips in defendant's favor. "In performing the balancing, the [speech] will not be considered in a

---

[16] **Compare Wicks v. Mississippi State Employment Servs.**, 41 F.3d 991, 996 (5th Cir. 1995) (protest against poor write-ups qualify as "an attempt to redress a personal grievance"). Of course, the absence of potential private benefit does not, *ipso facto*, indicate that speech is publicly important. But the lack of any identifiable motive relating to the advancement of private interests gives credence to appellant's contention that her speech addressed a matter of public import. **Cf. Thompson**, 901 F.2d at 465-66.

7

vacuum; the manner, time, and place of the employee's expression are relevant."[17] Other "pertinent considerations [include] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, . . . impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise,"[18] or "can be considered hostile, abusive, or insubordinate."[19] The trial court reasoned that, even assuming Branton's speech implicated an issue of public concern, the government's interest in maintaining an orderly workplace trumped her interest in expression. To reach this conclusion, the court necessarily had to look beyond the four corners of the complaint, accepting as true defendant's apparent assertions in its filings. This we may not do in a Rule 12(b)(6) review.[20]

Concluding that the district court went beyond the pale of a Rule 12(b)(6) review we must VACATE the judgment appealed and REMAND for further proceedings consistent herewith.

---

[17]**Rankin v. McPherson**, 483 U.S. 378, 388 (1987) (citations omitted).

[18]**Id.**

[19]**Matherne v. Wilson**, 851 F.2d 752, 760 (5th Cir. 1988); **Click**, 970 F.2d at 112.

[20]**Baker**, 75 F.3d at 196. Unlike in **Baker**, Fed. R. Civ. P. 12(c) does not come into play here, because the district court relied on facts asserted in defendant's *memoranda*.